UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIFESTYLE LIFT HOLDING,
INC., *et al.*,

      Plaintiff,

v.

MARYLAND PLASTIC SURGERY
ASSOCIATES, LLC., *et al.*,

      Defendants.

_____/

Case No. 07-14350

District Judge Paul V. Gadola
Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

Before the Court is Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue* [Docket #5], filed November 20, 2007. This motion has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that the motion be DENIED.

    **I.   PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiffs filed suit on October 12, 2007, alleging trademark infringement in violation of 15 U.S.C. §§1114, 1125(a)(d), violations of the Virginia Consumer Protection Act and a Virginia state law claim of unfair competition. VA CODE §§59.1-196 *et seq*. Plaintiff Lifestyle Lift Holding, Inc. ("LLH"), a Michigan Corporation holding the registered

-1-

trademark, Lifestyle Lift®, ("Mark") licenses its trademark to plastic surgery centers nationwide. Plaintiff LL VA, P.C. ("LL VA"), a Michigan corporation licensed to use the Mark, is registered to do business in Virginia.

Defendants Maryland Plastic Surgery Associates, L.L.C. ("MPSA") and Adam Summers, M.D., residing in Maryland, allegedly own and operate the websites www.mdcomsetic.com and www.my-threadlift.com, also reserving the domain name www.Lifestyle-facelift.com and utilizing the domain name www.Just-Your.Lifestyle-Facelift.com. According to Plaintiffs, typing in these domain names "automatically directs a user to the www.my-threadlift.com website which identifies its plastic surgery procedures using the phrases 'lifestyle facelift' or 'Lifestyle Lift.'" *Plaintiffs' Response*, *Docket #6* at 2. The Complaint alleges that "[o]ne or both Defendants pay third parties to use Plaintiff LLH's registered mark "Lifestyle Lift" as an "adword for their own services," creating an automatic redirection to a MPSA website when typing in the search terms "Lifestyle Lift." *Complaint* at ¶17. Plaintiffs also allege that "Defendants have been asked to cease and desist but have refused to do so." *Id.* at ¶20, Exhibit F. Plaintiffs request monetary and injunctive relief.

## II. STANDARD OF REVIEW

In order to survive a motion to dismiss for lack of *in personam* jurisdiction, the plaintiff must "present a prima facie case that the district court's exercise of personal jurisdiction would not offend due process." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002). "Personal jurisdiction can be invoked either via general

jurisdiction, where the defendant has 'continuous and systematic' contact with the forum state, *see Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445-47, 72 S.Ct. 413, 96 L.Ed. 485 (1952), or via limited jurisdiction, where the subject matter of the lawsuit is related to the defendant's contacts with the forum state." *Sports Authority Michigan, Inc. v. Justballs, Inc.*, 97 F.Supp.2d 806, 810 (E.D.Mich.2000)(Woods, J.); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996).

The Court must first determine "whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution." *Audi AG and Volkswagon of America, Inc. v. D'Amato,* 341 F.Supp.2d 734, 741 -742 (E.D.Mich.,2004)(Borman, J.). "If not, then whether the rule of statutory construction supports such an exercise of jurisdiction over defendants." *Id.* at 742. Because "[t]he Michigan Supreme Court has construed Michigan's Long-Arm Statute to bestow the broadest possible grant of personal jurisdiction consistent with due process," *Id.* at 741, "the two questions become one." *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog* 954 F.2d 1174, 1176 (6th Cir. 1992).

### III. ANALYSIS
#### A. Applicable Law

Parties agree that the *general* personal jurisdiction as laid out in M.C.L. §600.711 is inapplicable, but disputes whether the Court enjoys limited personal jurisdiction as provided in §600.715:

> "The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant."

The plaintiff "must establish with reasonable particularity sufficient 'minimum contacts' with Michigan so that the exercise of jurisdiction . . . would not offend 'traditional notions of fair play and substantial justice.'"*Neogen Corp. v. Neo Gen Screening, Inc*., 282 F.3d 883, 889 (6th Cir. 2002)( *citing Int'l Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

"'Purposeful availment,' the 'constitutional touchstone' of personal jurisdiction, is present where the defendant's contacts with the forum state 'proximately result from actions by the defendant . . . that create a 'substantial connection' with the forum State,'" *Id.* at 889 (*citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)) "and where the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.' " *Id.*, (*citing Burger*

*King Corp*, at 474, 2183). "In order for a court to assert limited personal jurisdiction over an out-of-state defendant, the following three criteria must be met:

> 'First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'"

*Neogen*, at 889-890( *citing S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir.1968)).

### B. Personal Jurisdiction Over Defendants

Defendants, arguing that jurisdiction "is not proper under the Michigan Long Arm statute," contend that "the only arguable basis for exercise of limited jurisdiction" is the second subsection of M.C.L. §600.715, *supra*, which refers to "'the doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.'" *Defendants' Brief* at 4 (citing M.C.L. §600.715). Defendants contend that "[n]o tortious conduct is alleged to have occurred in Michigan," and that "the brunt of the injury alleged" did not occur in Michigan. *Id.* They note further that Plaintiff LL VA "who is alleged to have been harmed is licensed outside of Michigan and does not conduct business in Michigan." *Id.* at 4-5.

#### 1. Purposeful Availment

### a. Defendants' Websites

As noted by Defendants, "[t]he maintenance of a website, in and of itself, does not constitute the purposeful availment of the privilege of acting in Michigan." *Neogen Corp.,* 282 F.3d at 890. However, "[a] defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Id.*; *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa.1997).

"The likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo,* 952 F.Supp. at 1124. "At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper." *Id.*; *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996). "At the opposite end . . . . [a] passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise personal jurisdiction." *Id.*; *Bensusan Restaurant Corp., v. King,* 937 F.Supp. 295 (S.D.N.Y.1996).

"The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. *Id.*; *Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328 (E.D.Mo.1996). In these cases, the exercise of jurisdiction is determined by examining the

level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.*

I disagree with Defendants' contention that their websites are wholly passive. Plaintiff notes that both websites permit users to submit scheduling preferences and "secure online registration forms" consisting of questionnaires "whereby a potential patient can submit personal and medical information to Maryland Plastic Surgery," registering users with Defendants' scheduling system.[1] *Plaintiffs' Response* at 7, Exhibits C, D. Because Defendants' websites contain interactive features and monetary promotions clearly designed to solicit patients but does not allow users to consummate purchases, it occupies the "middle ground" under the *Zippo* test.

The fact that Defendants' websites neither permit online purchases nor have successfully solicited even one Michigan resident weighs against the finding of personal jurisdiction. This conclusion is especially strengthened by the fact that Defendants have not transacted business with a single Michigan resident as a result of the websites. In contrast, the court in *Visage Spa, LLC v. Salon Visage, Inc.*, 2006 WL 2130512, *6 (E.D.Mich.,2006)(Borman, J.), found that the defendant spa's website was "neither passive nor highly interactive," but "[b]ecause gift certificates may be purchased through the website, and had in fact been purchased by at least one Michigan resident, personal

---

[1]The Court also notes that Defendants' website allows viewers to hyperlink directly from its site to "CareCredit," permitting viewers to apply for a revolving line of credit for plastic surgery procedures. https://www.carecredit.com/providerloc/

jurisdiction was present.[2]  Likewise, in *Lexmark Intern., Inc. v. Laserland, Inc.,* 304 F.Supp.2d 913, 918 (E.D.Ky. 2004), the finding of personal jurisdiction turned on the sale of "products, advertised on its website" to the Kentucky residents rather than the fact that the website was in the "highly interactive" category under *Zippo*.  *See also Edberg v. Neogen Corp.,* 17 F.Supp.2d 104, 114 (D.Conn.,1998)("In this case, there is no evidence that any user in Connecticut accessed Neogen's Web site or purchased products based upon the Web site advertisement.").  Thus, the nature of the Defendants' websites would not by itself support a finding of purposeful availment.

**b.  The Effects Test**

Nevertheless, Defendants' website activity, combined with the deliberate use of Plaintiffs' Mark, constitutes purposeful availment.  Despite the fact that Michigan residents did not use the alleged infringing websites, the Court still has personal jurisdiction over Defendants under the "effects" test set forth in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984).  "[T]o satisfy the 'effects' test,'" Plaintiffs "must demonstrate (1) that the brunt of the injury was felt in Michigan, (2) that . . . Defendants use of the . . . Mark[] was intentional or deliberate, and (3) that . . . Defendant's acts were expressly aimed at the State of Michigan."  *Ford Motor Co. v. Great Domains, Inc.,* 141 F.Supp.2d 763,773 (E.D.Mich.2001)(Cleland, J.); *Calder,* at 789-790.

---

[2]*Visage* found against personal jurisdiction for a co-defendant whose website did not sell gift certificates, but merely displayed the allegedly infringing mark, stating that the"passive display of the Mark is insufficient to establish purposeful availment for the purpose of due process."

### i.) Brunt of the Injury

*Great Domains,* questioning "whether a corporation necessarily feels the brunt of an injury where its headquarters are located," nonetheless permitted jurisdiction "upon a clear showing" that the infringing acts were aimed at the plaintiff. *Id.* at 777-778; *Core-Vent, Corp. v. Nobel Indus. AB,* 11 F.3d 1482 (9th Cir.1993). Defendants' use of the term "lifestyle lift" refers specifically to a trade term coined by Plaintiff LLH, indicating that Defendants' actions were aimed at Plaintiffs, both of whom are Michigan corporations.

### ii.) Intentional Use of the Mark

A strong showing of willfulness or intentional infringement strengthens the inference that the effects are felt in the forum state. Citing *Audi AG and Volkswagon of America, Inc. v. D'Amato,* 341 F.Supp.2d 734, 746 -747 (E.D.Mich. 2004), Defendants argue that "'simply registering someone else's trademark as a domain name and posting a website on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another,'" noting that "'[f]or the "effects doctrine" to apply, there needs to be "something more."'" *Defendants Brief* at 7; *Audi AG,* at 746 (*citing Panavision Intl. L.P. v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir.1998)). As held in *Great Domains*, the "something more" is the deliberate use of Plaintiff LLH's Mark. This Court finds it "highly unlikely" that Defendants' use of the Mark "resulted from negligence." *Id.* at 774.

While I agree that Defendants should not be subject to jurisdiction "merely by incorporating a famous mark into a domain name,"*id.,* the following factors show willfulness: 1.) Both Plaintiffs and Defendants provide the same service (plastic surgery)

2.) Defendants' domain name is strikingly similar to Plaintiff LLH's Mark  3.) Defendants continued to display the Mark after receiving cease and desist letters from Plaintiff LLH. *Complaint,* Exhibit F.

### iii.) Expressly Aimed at Michigan

In determining whether Defendants' alleged infringement is expressly aimed at Michigan, the Court considers "1) the likelihood of confusion as to who controls the domain that is created by the domain name itself and (2) the level of individualized targeting at the trademark owner." *Great Domains,* at 776.  "[I]f the likelihood of confusion created by the domain name is high, a low-level showing of individual targeting will be required." *Id.* Conversely, "[i]f the likelihood of confusion is low, the level of individual targeting required will be high." *Id.*

Here again, Defendants' alleged use of Plaintiff LLH's highly distinctive Mark to advertise  plastic surgery procedures creates a potential for confusion that is much greater than if Defendants were, for example, using the Mark to advertise hydraulic lifts, shoe lifts, exercise equipment, or motivational seminars. More fundamentally, because "Plaintiffs' allege that Defendant deliberately infringed . . . with the knowledge" that Plaintiffs reside in Michigan, "the Court finds that Defendant could anticipate being haled into Court in Michigan." *Audi AG,* 341 F.Supp.2d 734, 747.

### b.  Defendants' Activities in Michigan

The Court next determines whether "the current controversy is related to

[Defendants'] forum-related activites." *Audi AG*, 341 F.Supp.2d at 748; *The Sports Authority Michigan, Inc. v. Justballs, Inc.,* 97 F.Supp.2d 806, 815 (E.D.Mich.2000)(Wood, J.). Because the alleged infringement harmed Plaintiffs who " principally reside in Michigan," the current controversy is sufficient related to Michigan for jurisdictional purposes. *Id.* Moreover, "[i]njury from trademark infringement" is deemed to have occurred "in the state where the trademark owner resides." *Sports Authority,* 97 F.Supp.2d at 815.[3]

### c. Whether the Exercise of Jurisdiction over Defendants Is Reasonable.

"Where the first two elements of the test for personal jurisdiction are met, there is an inference that the exercise of jurisdiction is reasonable." *Sports Authority Michigan, Inc. v. Justballs, Inc.,* 97 F.Supp.2d at 815; *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996). "[F]actors to consider in assessing reasonableness are:

> "[T]he burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. A court must also weigh in its determination 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

---

[3]In the same vein, I disagree with Defendants' argument that Count I of the Complaint fails to allege that the brunt of the injury occurred in Michigan because Plaintiff LL VA is located in Virginia, not Michigan. *Defendants' Brief* at 6-7. However, included in Count I is the allegation that "[u]nless restrained, Defendants will continue to . . . dilute the value of Plaintiffs' services mark 'Lifestyle Lift' and will continue to cause Plaintiffs immediate and irreparable harm," additionally causing "financial damage to their businesses, goodwill, reputation and profits." *Complaint* at ¶¶28-29. Because Plaintiffs allege harm to not only LL VA, but LLH's ongoing financial interests in the Mark, the they have sufficiently alleged the "brunt of the injury" took place in Michigan.

*Id.*; (*citing Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987))(internal citations omitted). Defendants' strongest argument here is that Plaintiff LL VA, doing business in Virginia, does not have a particular interest in a Michigan forum. Nonetheless, because both of the allegedly infringed parties are Michigan corporations, the controversy can be resolved most efficiently in this forum. While out-of-state Defendants undoubtedly bear the greater inconvenience in defending their case here in Michigan "this factor does not weigh so heavily. . . as to render jurisdiction unconstitutional." *Sports Authority,* at 815.

**C. Venue**

Defendants also argue that Venue in this district is improper, arguing that the services in question are rendered in Maryland. They also argue that the first three counts of the Complaint do not allege acts or omissions occurring in Michigan. *Defendants' Brief* at 13 (*citing Verbis v. Iowa Dept. Of Human Services,* 18 F.Supp.2d 710, 717 (E.D. Mich. 2004)). Defendants, noting further that Counts IV and V allege violation of Virginia law, argue that because the alleged violations took place in Maryland, venue is proper in Maryland. *Defendants' Brief* at 13-15.

Pursuant to 28 U.S.C. § 1406(a), "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Likewise, §1404(a) instructs that for "the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Under § 1404(a), "[d]istrict courts have wide discretion to transfer an action under in order to 'prevent waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"*Audi AG,* 341 F.Supp.2d at 749 ( *citing Helder v. Hitachi Power Tools, USA Ltd.,* 764 F.Supp. 93, 95-96 (E.D.Mich.1991)). "The Court must determine whether: (1) the action could have been brought in the proposed transferee-court; (2) a transfer would promote the interests of justice; and (3) a transfer would serve the parties' and witnesses' convenience." *Thomas v. Home Depot, U.S.A., Inc.,* 131 F.Supp.2d 934, 936 (E.D.Mich.2001)(Gadola, J.). "The moving party bears the burden of demonstrating that, in light of these factors, 'fairness and practicality strongly favor the forum to which transfer is sought.'" *Id*. (*citing Rowe v. Chrysler Corp*., 520 F.Supp. 15, 16 (E.D.Mich.1981)). The Court must consider the following:

> "'(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of processes to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case most expeditiously and inexpensively; and (7) the interest of justice.'"

*Audi AG,* 341 F.Supp.2d at 749 (*citing MCNIC Oil & Gas Co. v. IBEX Resources Co.,* 23 F.Supp.2d 729, 738-39 (E.D.Mich.1998)).

An examination of these factors weighs against granting Defendants' motion for transfer. Defendants' primary argument that venue is not proper because they are not

subject to personal jurisdiction in this Court stands at odds with the above 12(b)(2) determination. Likewise, Defendants' contention that a "substantial part of the alleged "events or omissions" occurred in "Maryland, not Michigan" is defeated by the fact that the alleged infringement was directed at two Michigan corporations. *Defendants' Brief* at 13; *Audi AG,* 341 F.Supp.2d at 748. Defendants have failed to meet their burden to show that the inconvenience of defending an action in this venue outweighs Plaintiffs' difficulties in trying the case in Maryland.

Further, in light of the finding that the Court enjoys personal jurisdiction over Defendant MPSA, a limited liability company, venue is likewise proper under 28 U.S.C. § 1391(c). "28 U.S.C. § 1391(c) states that, '[f]or purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.'" *Mid-West Materials, Inc. v. Tougher Industries, Inc.,* 484 F.Supp.2d 726, 733 (N.D.Ohio 2007). "[I]n the case of a corporate defendant, the residence of the defendant incorporates the test for personal jurisdiction." *Centerville ALF, Inc. v. Balanced Care Corp.,* 197 F.Supp.2d 1039, 1048 (S.D.Ohio 2002). "In other words, if a corporate defendant is subject to personal jurisdiction in a judicial district, it is deemed to reside there for purposes of venue."

### IV. CONCLUSION

For these reasons, I recommend that Defendants' *Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue* [Docket #5] be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 19, 2008

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 19, 2008.

S/Gina Wilson
Judicial Assistant
